[No. 4443–2–III.   Division Three.   May 25, 1982.]

McCOMBS CONSTRUCTION, INC., *Respondent,* v. SCOTT K. BARNES, ET AL, *Appellants.*

DONALD K. BARNES, ET AL, *Appellants,* v. McCOMBS CONSTRUCTION, INC., *Respondent.*

*William Fremming Nielsen, William J. Schroeder,* and *Paine, Lowe, Coffin, Hamblen & Brooke,* for appellants.

*John A. Sherrick* and *Gebhardt, Looney & Sherrick,* for respondent.

Roe, J.—Scott Barnes appeals a judgment which held him personally liable for improvements he ordered on a house occupied by him as a tenant of his parents, Donald K. and June M. Barnes, who appeal from a judgment lien

decreed on their house for these improvements, which they neither ordered nor authorized. The trial court denied personal judgment against the parents.

Scott Barnes was the principal owner and chief executive officer of S. K. Barnes, Inc. (SKB), a Washington corporation, d/b/a Sun Runner Marine. In April 1979, his parents, Donald and June Barnes, purchased a 14–acre tract of land adjacent to property owned by SKB. Mr. and Mrs. Barnes gave Scott permission to use a house situated on the property but did not direct that any improvements be made thereon. Scott himself undertook certain changes and directed McCombs Construction, Inc. (McCombs), a firm which had performed a number of construction jobs for Sun Runner, to completely remodel the house and send the bill to Sun Runner Marine. Scott moved into the house in November 1979.

On February 28, 1980, McCombs filed a notice of claim of lien in the amount of $48,131.70 against SKB's and also Donald and June Barnes' property for labor, materials and equipment supplied to improve it. Approximately $28,000 of that sum represented work done on the house, the balance owing for work and an equipment lease to Sun Runner Marine.

Later, SKB filed for bankruptcy and the corporation was dissolved. A dispute over work for Sun Runner Marine was resolved and plaintiff's complaint was amended to seek personal judgment against Scott Barnes, Donald and June Barnes, and a lien on Donald and June Barnes' property.

Meanwhile, on April 25, 1980, Mr. and Mrs. Barnes filed an action to remove the lien. This was consolidated with McCombs' foreclosure action and, in a bench trial, McCombs was awarded a judgment in the amount of $28,057.97 against Scott individually for improvements made to the house. In addition, the court awarded McCombs a lien against Donald and June Barnes' property to secure payment of the judgment, plus $5,226 for costs and attorney's fees. The Barneses appeal.

■ The primary issue is whether Scott was the "agent"

of his parents as that term is used in the lien statute so that property owned by his parents was lienable for improvements made solely at the direction of Scott. RCW 60.04.010 authorizes a lien against real property for labor and materials furnished at the instance of the owner or his agent. It provides in part:

> Every person performing labor upon, furnishing material, or renting, leasing or otherwise supplying equipment, to be used in the construction, alteration or repair of any . . . building . . . has a lien upon the same for the labor performed, . . . material furnished, or equipment supplied by each, respectively, *whether performed, furnished, or supplied at the instance of the owner of the property subject to the lien or his agent;* . . .

(Italics ours.) Thus, a lien arises only if the work is supplied at the instance of the owner or his agent. Any right arising as part of a materialman's lien is a statutorily created right and will be strictly construed. *Dean v. McFarland,* 81 Wn.2d 215, 219–20, 500 P.2d 1244 (1972). The statutory operation is not to be extended for the benefit of those who do not clearly come within the terms of the statute. *Dean, supra.* The burden rests upon a person claiming the lien to establish his right to a lien. *Westinghouse Elec. Supply Co. v. Hawthorne,* 21 Wn.2d 74, 77, 150 P.2d 55 (1944).

It is undisputed that the owners of the subject property, Donald and June Barnes, did not direct or order any work done. They had no contractual relationship with McCombs. In fact, Donald Barnes testified he bought the property solely as a business investment, had no interest in the house and considered it incidental to the land purchase. Donald Barnes further testified he never suggested or required that Scott Barnes make any improvements to the property. The trial court found the elements of an actual principal/agent relationship did not exist here. Consent and control are the essential elements of an agency. *Moss v. Vadman,* 77 Wn.2d 396, 403, 463 P.2d 159 (1969). The relationship may be created by law, but if no factual pattern exists which gives rise to an agency, then no agency

exists despite the intent of either or both of the parties. *Moss, supra.*

The trial court did, however, find that Scott was a statutory agent. We disagree. RCW 60.04.010 limits statutory agents to:

> [E]very registered or licensed contractor, registered or licensed subcontractor, architect, *or person having charge,* of the construction, alteration or repair of any property subject to the lien as aforesaid, shall be held to be the agent of the owner for the purposes of the establishment of the lien created by this chapter: . . .

(Italics ours.) The only conceivable category applying to Scott would be "person having charge, of the construction". However, we do not find it applicable here. Scott ordered the construction and placed himself in charge thereof. He was not in charge of it for the benefit of his owner parents. A statutory agent who may establish a lien under the statute is a limited one. There must be a principal, impliedly the owner, who must grant authority to one of the types of persons enumerated. Although contractors, subcontractors and architects have the authority to incur an indebtedness which may result in the attachment of a lien on the owner's property, this authority may arise only where the owner has given it to them. The record does not support the trial court's finding that the Barneses made Scott their statutory agent.

The Barneses argue a tenancy at will was created here, relying on *Turner v. White,* 20 Wn. App. 290, 579 P.2d 410 (1978). *Turner* held that where the tenant had come upon the premises with permission of the owner and the tenancy was terminable without notice and provided for no monthly or periodic payments, a common law tenancy at will was created, terminable only upon demand for possession. The facts of the case at bench support application of the law governing lessors and lessees. If a lease does not make it an obligation of the lessee running to the lessor to improve the leased premises, the interest of the lessor may not be charged with liens of those who perform work for the

lessee, at the latter's request. *Bengel v. Bates,* 29 Wn.2d 779, 782, 189 P.2d 480 (1948); *Seattle Ass'n of Credit Men v. Daniels,* 15 Wn.2d 393, 130 P.2d 892 (1942); *Stetson–Post Mill Co. v. Brown,* 21 Wash. 619, 59 P. 507 (1899). Scott Barnes was not obligated to have any work done on the property; thus, only he and his interest is subject to a lien. Unfortunately, Scott's business is bankrupt and he has no property interest in the improved house.

McCombs seems to argue that because Donald Barnes visited the house while the improvements were being made and made no objection, he impliedly authorized the work. The law does not support this conclusion. A lessor's knowledge of, and acquiescence in, the making of improvements by the tenant, are insufficient to establish agency. 53 Am. Jur. 2d *Mechanics' Liens* § 132 (1970).[1] McCombs' reliance on *Armstrong v. Blackadar,* 118 So. 2d 854 (Fla. Dist. Ct. App. 1960), is misplaced. There, the father–owner of a house occupied by his son was *obligated* under a contract of sale to repair fire damage to the house. The court found an agency relationship existed between the father and son such that the son's contracting for the required repair work bound the father and thereby subjected the property to both an equitable and statutory lien. Here, Mr. Barnes was not obligated to anyone to make any repairs or improvements and there are insufficient facts to support a finding of agency. Nor is *Frehner v. Morton,* 18 Utah 2d 422, 424 P.2d 446 (1967) persuasive. There, the father–owner gave his daughter permission to contract with a landscaper to do landscaping on property owned by him but intended for the use of his daughter. The father indicated he would pay for the work and also discussed the job with his general contractor. The court found the father authorized his daughter to contract with plaintiff and therefore a valid lien could

---

[1]Citing *Langston v. Matthews,* 117 Ark. 626, 173 S.W. 397 (1915); *Cassaday v. DeJarnette,* 251 Iowa 391, 101 N.W.2d 21 (1960); *Pond v. Harrison,* 96 Kan. 542, 152 P. 655 (1915); *Masterson v. Roberts,* 336 Mo. 158, 78 S.W.2d 856, 97 A.L.R. 862 (1934); and others.

attach to the subject property. Here, there is no evidence Donald Barnes gave permission to Scott to contract for the work done; nor did he indicate he would pay for the work or be responsible for it in any way.

Next, the Barneses contend McCombs' failure to give preclaim notice as required by RCW 60.04.020 invalidates the lien. Since we hold that no lien did attach to the subject property under the facts of this case, we need not address this issue.

Finally, the Barneses contend the trial court erred in imposing personal liability upon Scott Barnes based on its finding that "Defendant SCOTT K. BARNES, conducted the Sunrunner [*sic*] Marine business, in such a manner as to co-mingle [*sic*] the corporate assets with his personal assets and the personal assets of his parents, defendants DONALD K. BARNES and JUNE M. BARNES."

■ The question whether the corporate form should be disregarded is a question of fact. *Truckweld Equip. Co. v. Olson,* 26 Wn. App. 638, 643, 618 P.2d 1017 (1980). If the trial court's finding is supported by substantial evidence, it must be sustained. *Grayson v. Nordic Constr. Co.,* 92 Wn.2d 548, 599 P.2d 1271 (1979). When the shareholders of a corporation, who are also the corporation's officers and directors, conscientiously keep the affairs of the corporation separate from their personal affairs, and no fraud or manifest injustice is perpetrated upon third persons who deal with the corporation, the corporation's separate entity should be respected. *Grayson, supra; Frigidaire Sales Corp. v. Union Properties, Inc.,* 88 Wn.2d 400, 562 P.2d 244 (1977). However, courts have pierced the corporate veil and imposed personal liability where the corporate entity has been disregarded by the principals themselves so that there is such a unity of ownership and interest that the separateness of the corporation has ceased to exist. *Grayson, supra; Kueckelhan v. Federal Old Line Ins. Co.,* 69 Wn.2d 392, 411, 418 P.2d 443 (1966).

Here, the evidence established that after the major construction was completed by McCombs, Scott Barnes moved

into the improved house with the intent of keeping it as his personal residence. Payment for the work was made with checks drawn upon the corporation's bank account and a boat manufactured by the corporation. The checks were not signed by Scott in a representative capacity on behalf of the corporation. The record provides substantial evidence that Scott commingled his personal affairs with those of the corporation such as to warrant imposition of personal liability upon Scott.[2]

We reverse the trial court's imposition of the lien on Donald and June Barnes' property[3] and affirm the personal judgment against Scott Barnes.

McINTURFF, C.J., and GREEN, J., concur.

---

[2]McCombs' argument that Scott Barnes did not file a certificate of assumed name pursuant to RCW 19.80.010 is irrelevant to the resolution of this case. Failure to comply with the statute merely goes to the corporation's capacity to sue. *Laliberte v. Wilkins,* 30 Wn. App. 782, 638 P.2d 596 (1981).

[3]An anomaly of the trial court's holding was that the parents were not held personally liable but were held to have constituted their son as an agent for lien purposes because they saw the work being done and did not object. No preclaim notice was given to the true owners because McCombs was under the erroneous impression that Scott was the owner because Scott said so.