[No. 13424-8-I.   Division One.   February 18, 1986.]

FAIR PRICE HOUSE MOVING CO., INC., *Appellant,* v. SIXTO PACLEB, ET AL, *Respondents.*

---

[3]In view of this holding, we do not address Ross's claim of prosecutorial misconduct.

814

*William Buchanan,* for appellant.

*Jerald A. Klein,* for respondents.

SWANSON, J.—In April 1979, Sixto and Illuminada Pacleb entered into a contract with Gerry L. Galer and Arden W. LaBelle to remodel their home. The Paclebs prepaid for the work that was done. In August 1979, the Paclebs fired Galer and LaBelle for poor workmanship and A & A Construction subsequently completed the remodeling. According to the State Department of Labor and Industries' Contractor Registration Section, Galer and LaBelle were unregistered contractors.

In May 1979, Fair Price House Moving Co., Inc. (Fair Price) entered into a contract with Bankwell Concrete Company, Inc. (Bankwell) for $2,785 to raise the Paclebs' home for the construction of a basement. Fair Price claims that Bankwell is a registered and bonded subcontractor that was hired by Galer and LaBelle to work on the remodeling of the Paclebs' home. James Puckett, Fair Price's president, further claims that when he refused to begin work until he was paid a $1,400 down payment, he observed a Bankwell representative receive from Sixto Pacleb a check, part of the proceeds of which he was paid, so that it appeared to him that Bankwell was the Paclebs' contractor. The Paclebs, however, claim to have no knowledge that Fair Price raised their house. Rather, Mr. Pacleb's affidavit states that he assumed that Galer and LaBelle had elevated the house since he had paid them

$3,475 to do so.

In Fair Price's action to foreclose a mechanics' lien against the Paclebs' property for nonpayment, the trial court granted summary judgment in the Paclebs' favor, holding that the lien was void and dismissing the complaint with prejudice. Upon the denial of its reconsideration motion, Fair Price appeals the summary judgment order.

The main issue in this appeal is whether the trial court erred in granting summary judgment to the owners against the lien claimant under RCW 60.04.010 in the absence of contractual privity where the contractors with whom the owners contracted were unregistered under RCW 18.27. A subissue is whether a genuine issue of material fact was raised as to whether the subcontractor that hired Fair Price had "apparent authority" from the owners to act as their agent for the purpose of establishing a lien against their property.

█ The court reviewing a summary judgment order makes the same inquiry as the trial court. A summary judgment is proper where the pleadings, depositions, admissions on file and affidavits show that no genuine issue exists as to a material fact and that the moving party is entitled to a judgment as a matter of law. CR 56(c); *Hartley v. State*, 103 Wn.2d 768, 774, 698 P.2d 77 (1985). The moving party bears the burden of demonstrating the non-existence of a genuine issue as to a material fact; moreover, all reasonable inferences from the evidence must be resolved in favor of the nonmoving party. *Jamison v. Monarch Life Ins. Co.*, 33 Wn. App. 95, 97–98, 652 P.2d 13 (1982).

RCW 60.04.010[1] authorizes a lien against real property

---

[1]RCW 60.04.010 provides in part:

"Every person performing labor upon . . . any . . . building . . . has a lien upon the same for the labor performed, . . . whether performed . . . at the instance of the owner of the property subject to the lien or his agent; and every registered or licensed contractor, registered or licensed subcontractor, architect, or person having charge, of the construction, alteration or repair of any property subject to the lien as aforesaid, shall be held to be the agent of the owner for the

by a person furnishing labor for the construction, alteration or repair of a building on that property "whether [the labor is] performed . . . at the instance of the owner of the property subject to the lien or his agent". *McCombs Constr., Inc. v. Barnes,* 32 Wn. App. 70, 73, 645 P.2d 1131 (1982). RCW 60.04.030 permits a lien

> to the extent of the interest of the person or company, who in his or its own behalf, or who, through any of the persons designated in RCW 60.04.010 to be agent of the owner or owners caused the performance of the labor, or the construction, alteration or repair of the property.

The agent so designated in RCW 60.04.010 is "every registered or licensed contractor, registered or licensed subcontractor, architect, or person having charge, of the construction, alteration or repair" on the subject property. *Irwin Concrete, Inc. v. Sun Coast Properties, Inc.,* 33 Wn. App. 190, 195–96, 653 P.2d 1331 (1982).

Here it is not asserted that the Paclebs had a contractual relation with Fair Price, *McCombs,* or that they otherwise caused Fair Price's performance of labor in their own behalf. Thus Fair Price had a lien against the Paclebs' property only if it performed its labor at the instance of the Paclebs' agent. RCW 60.04.010. Fair Price argues that Galer and LaBelle or Bankwell was the Paclebs' agent for establishing its mechanics' lien against the Paclebs' property.

The Paclebs entered into a contract for the home alteration on their property with only Galer and LaBelle. However, the contractors or subcontractors that are required to be registered under RCW 18.27 "shall be deemed the agents of the owner for the purposes of establishing the [statutory mechanics'] lien . . . only if so registered". RCW 60.04.010. Assuming that Galer and LaBelle would other-

---

purposes of the establishment of the lien created by this chapter . . . Contractors or subcontractors required to be registered under chapter 18.27 RCW or licensed under chapter 19.28 RCW shall be deemed the agents of the owner for the purposes of establishing the lien created by this chapter only if so registered or licensed."

wise qualify as the Paclebs' agents for establishing the statutory lien, the evidence in the submitted documents is that Galer and LaBelle were not registered in compliance with the contractors' registration statute, RCW 18.27; therefore, they could not be deemed to be the Paclebs' agents under RCW 60.04.010.

Fair Price argues that even if Galer and LaBelle were unregistered contractors that could not be the Paclebs' agents for establishing a mechanics' lien under RCW 60.04-.010, it is entitled to a mechanics' lien against the Paclebs' property because under RCW 60.04.010 a registered subcontractor can be the owner's agent for establishing the lien and here Bankwell was a registered subcontractor that hired it to raise the house. We disagree.

The mere fact that an owner's property is benefited by labor performed does not make the property lienable. *Northlake Concrete Prods., Inc. v. Wylie,* 34 Wn. App. 810, 818, 663 P.2d 1380 (1983). Further, the fact alone that a subcontractor is registered does not make it the owner's agent for establishing a mechanics' lien. RCW 60.04.010. Where the contracting party does not own the property, another's interest in the property will be subject to a mechanics' lien only if the contracting party acts as his agent. *Northlake Concrete.*

> A statutory agent who may establish a lien under the statute is a limited one. There must be a principal, impliedly the owner, who must grant authority to one of the types of persons enumerated. Although contractors, subcontractors and architects have the authority to incur an indebtedness which may result in the attachment of a lien on the owner's property, this authority may arise only where the owner has given it to them.

*McCombs,* at 74. Thus Bankwell was the Paclebs' agent only if the Paclebs gave it the authority to establish a lien against their property.

No evidence was presented that Bankwell had entered into a contract with the Paclebs. Fair Price asserts that Galer and LaBelle hired Bankwell to work on the remodel-

ing of the Paclebs' home. However, even if Galer and LaBelle had subcontracted with Bankwell, Fair Price has cited no legal authority for the proposition that although Galer and LaBelle, as unregistered contractors, could not themselves be the owners' agents for establishing a mechanics' lien under RCW 60.04.010, they could nevertheless subcontract work to another contractor that was registered that would be deemed to have the owners' authorization to act as their agent to establish a lien against their property.

*Spry v. Miller,* 25 Wn. App. 741, 744–46, 610 P.2d 931 (1980), upon which Fair Price relies, is distinguishable from the instant case in that that case involved water well contractors who are exempt from the contractors' registration statute if they are licensed under RCW 18.104 and, further, the *Spry* court found that the unlicensed contractor had substantially complied with the water well construction operators' licensing statute and that the full protection contemplated by the contractors' registration statute was provided to the party seeking to escape his obligation.

Here no evidence was submitted that the general contractors, Galer and LaBelle, were insured and bonded, as required in cases finding substantial compliance with the contractors' registration statute. *See, e.g., Joint Admin. Bd. v. Fallon,* 89 Wn.2d 90, 96, 569 P.2d 1144 (1977); *Ram Dev. Co. v. La Collina, Ltd.,* 20 Wn. App. 195, 199, 579 P.2d 402 (1978); *Expert Drywall, Inc. v. Brain,* 17 Wn. App. 529, 538–39, 564 P.2d 803 (1977), *review dismissed,* 92 Wn.2d 1004 (1978). Further, while Fair Price argues that the Paclebs received the statutorily contemplated protection against unreliable, fraudulent or incompetent contractors through Bankwell's and its bonds, the Paclebs did not receive the statutorily contemplated financial protection against the general contractors, Galer and LaBelle, when they incurred the additional costs of having the remodeling completed satisfactorily after they had already paid Galer and LaBelle. *Murphy v. Campbell Inv. Co.,* 79 Wn.2d 417, 422, 486 P.2d 1080 (1971); *Expert Drywall,* at 538–39.

Fair Price argues, nonetheless, that Bankwell was the Paclebs' agent because of its apparent authority stemming from Fair Price's president's assertion that he witnessed Sixto Pacleb give to a Bankwell representative a check, part of the proceeds of which was paid to Fair Price. This argument fails.

Apparent authority exists when although authority is not actually granted, "the principal knowingly permits the agent to perform certain acts, or where he holds him out as possessing certain authority". *Taylor v. Smith,* 13 Wn. App. 171, 177, 534 P.2d 39 (1975) (quoting *Larson v. Bear,* 38 Wn.2d 485, 490, 230 P.2d 610 (1951)). An agent's apparent authority can be inferred only from the principal's acts and conduct, not the agent's own acts and declarations. *Lamb v. General Assocs., Inc.,* 60 Wn.2d 623, 627, 374 P.2d 677 (1962).

Further, an agent does not have apparent authority merely because it looks so to the person with whom he deals. An objective test of what constitutes apparent authority is required. *Taylor.*

> Facts and circumstances are sufficient to establish apparent authority only when a person exercising ordinary prudence, acting in good faith and conversant with business practices and customs, would be misled thereby, and such person has given due regard to such other circumstances as would cause a person of ordinary prudence to make further inquiry.

*Lamb,* at 627–28, *quoted in Taylor.*

Here Fair Price does not claim the existence of an actual principal–agent relation between the Paclebs and Bankwell. Consent and control are essential elements of an agency. Further, while such a relation may be created by law, no agency exists if the facts do not give rise to an agency despite the intent of either or both of the parties. *McCombs,* at 73–74.

Fair Price has not asserted facts giving rise to an agency relation between the Paclebs and Bankwell. Fair Price has presented no evidence that the Paclebs consented to Bank-

well's acting as their agent or that the Paclebs exerted control over Bankwell's conduct within the scope of an agency relation. Mr. Pacleb's affidavit states that he assumed that Galer and LaBelle had elevated the house since he had paid them $3,475 for the labor and supplies needed to raise the house.

Further, while Fair Price argues that a material factual issue regarding Bankwell's apparent authority to act as the Paclebs' agent is raised by its president's assertion that he observed a Bankwell representative receive from Mr. Pacleb a check, part of the proceeds of which was paid to him as a down payment, none of the Paclebs' canceled checks that were reproduced in the summary judgment record was written to Bankwell as payee.

In addition, Fair Price asserts that its only duty of inquiry was to ascertain, as it claimed it did, that Bankwell was a registered contractor and that once it had so ascertained, it could be assured that Bankwell was the owners' agent for purposes of establishing a mechanics' lien against the owners' property. However, as explained above, the mere fact of registration does not make a contractor or subcontractor the owner's statutory agent unless the owner had authorized it to incur an indebtedness that may result in the attachment of a lien on the owner's property. RCW 60.04.010; *McCombs,* at 74. Thus relying on the sole fact of a contractor's registration to establish the contractor's agent status was not an exercise of ordinary prudence. *Taylor.* The facts asserted by Fair Price do not raise a genuine issue of material fact as to Bankwell's alleged authority to act as the Paclebs' agent for the establishment of a mechanics' lien.

■ Rights arising from a mechanics' lien are created by statute and are to be strictly construed. The statute will not be extended to benefit those who do not come clearly within its terms. Fair Price has not met its burden of establishing a lien. *Northlake Concrete,* at 813.

The purpose of both the contractors' registration and the mechanics' lien statutes is to protect the public against

unreliable, fraudulent, financially irresponsible, and incompetent contractors. *Expert Drywall*, at 540. The "public" that is protected under RCW 18.27.140[2] includes consumers and the beneficiaries of the contractor's bond listed in RCW 18.27.040,[3] including persons furnishing labor. *International Comm'l Collectors, Inc. v. Carver*, 99 Wn.2d 302, 308, 661 P.2d 976 (1983). Under RCW 18.27.040 persons, firms, and corporations furnishing labor, like Fair Price, have the right to bring a claim against the registered contractor's bond for labor provided. *International Comm'l Collectors*, at 306–08; *Allied Am. Painting Contractors, Inc. v. Shore*, 40 Wn. App. 783, 784, 700 P.2d 389 (1985). The right of those who provide construction labor to bring claims against the contractor's bond protects consumers against needless suits that would otherwise be brought by suppliers of labor to foreclose liens against the consumers' property. *International Comm'l Collectors*, at 308. Here Bankwell's bonding company, Consumer's United Insurance Company, was a codefendant that appeared in the action. The trial court did not err in granting summary judgment in favor of the Paclebs.

Since RAP 18.1's requirements have been met, the Paclebs are awarded appellate attorney fees and costs of $1,000

---

[2]RCW 18.27.140 states:

"It is the purpose of this chapter to afford protection to the public including all persons, firms, and corporations furnishing labor, materials, or equipment to a contractor from unreliable, fraudulent, financially irresponsible, or incompetent contractors."

[3]RCW 18.27.040 provides in part:

"(1) Each applicant shall, at the time of applying for or renewing a certificate of registration, file with the department a surety bond . . . conditioned that the applicant will pay all persons performing labor, including employee benefits, for the contractor, . . . and will pay all persons furnishing labor or material or renting or supplying equipment to the contractor . . .

" . . .

"(3) Any person, firm, or corporation having a claim against the contractor for any of the items referred to in this section may bring suit upon such bond . . .

"(4) . . . [C]laims shall be satisfied from the bond in the following order:

"(a) Labor, including employee benefits;"

pursuant to RCW 60.04.130. *Irwin Concrete, Inc. v. Sun Coast Properties, Inc.*, 33 Wn. App. 190, 200–01, 653 P.2d 1331 (1982). The judgment is affirmed.

SCHOLFIELD, C.J., and COLEMAN, J., concur.