[No. 56157-0-I. Division One. October 23, 2006.]

HENIFIN CONSTRUCTION, LLC, *Appellant*, v. KEYSTONE CONSTRUCTION, G.W., INC., ET AL., *Respondents*.

*Philip J. Buri* (of *Buri Funston, PLLC*) and *Craig P. Hayes* (of *Ludwigson, Thompson, Hayes & Bell*), for appellant.

*John C. Belcher* (of *Belcher Swanson Law Firm, PLLC*), for respondents Keystone Construction, G.W., Inc. and United States Fidelity & Guaranty.

*Kevin J. Craig* (of *Corr Cronin Michelson Baumgardner & Preece, LLP*), for respondents McDonald's Corporation and System Capitol Real Property Corporation.

¶1 GROSSE, J. — "Construction agent" is defined for the purposes of RCW 60.04.021 as "any registered or licensed contractor, registered or licensed subcontractor, architect, engineer, or other person having charge of any improvement to real property, who shall be deemed the agent of the owner for the limited purpose of establishing the lien created by this chapter."[1] Because McDonald's Corporation placed general contractor Keystone Construction, G.W., Inc., in charge of constructing its restaurant, RCW 60.04.011(1) deems Keystone to be McDonald's statutory construction agent for the purposes of establishing subcontractor Henifin Construction, L.L.C.'s lien on improvements it made to McDonald's property. We reverse in part and remand for further proceedings.

## FACTS

¶2 In August 2002, Keystone Construction was in the process of submitting a bid as general contractor for the construction work on a McDonald's restaurant on Samish Way in Whatcom County. McDonald's Corporation and System Capital Real Property Corporation (collectively McDonald's) owned the property. Henifin Construction had performed some earthwork on the site and learned of the forthcoming bidding. Henifin Construction approached Gert Christensen of Keystone Construction within a day or two of the bid submission deadline and indicated that Henifin wished to submit a subcontractor's bid for the earthwork. Keystone told Henifin to submit a bid for the earthwork subcontract and Henifin went to work preparing a bid.

¶3 Prior to the preparation of its bid, Henifin Construction never asked Keystone for copies of the plans and specifications that were the conditions for the bid to McDonald's. These specifications included the soils engineering report. Henifin tried to find some of those documents by checking the bid center a few hours before bids were due; however, the plans and specifications for the

---

[1] RCW 60.04.011(1).

project were checked out, so Henifin did not obtain copies, even though they were available through Christensen if Henifin had requested those documents from him.

¶4 Henifin submitted its bid to Keystone within two or three hours of the deadline for Keystone to submit its bid to McDonald's. Prior to Keystone accepting Henifin's bid, Christensen met with representatives of Henifin on the site. Christensen reviewed Henifin's bid and asked if it was complete. Henifin told him it was complete. Based on Henifin's statements, Keystone accepted Henifin's bid for the subcontracting earthwork and submitted it as a portion of Keystone's overall bid to McDonald's for the general contractor work. McDonald's accepted Keystone's bid, which included the subcontract bid submitted by Henifin.

¶5 At the time Henifin submitted its bid to Keystone, Keystone was not fully aware as to what was called for in the project's plans and specifications. Even though Christensen had scanned the soils and engineering report that was part of the plans and specifications, he did not fully realize that the soils report required the export of all native soils and the import of the fill necessary to accomplish the earthwork that was set forth in the underlying contract. Henifin was not aware of these requirements because it had never seen the soils report. The subcontract signed by Henifin referred to the plans and specifications that were part of the project that Henifin had agreed to perform for the fixed amount of $141,720.

¶6 When weather problems arose during construction, Henifin requested some accommodations from Keystone due to additional costs that Henifin would incur as a result of bad weather delays. In an effort to see the job was done timely and smoothly, Keystone agreed to accommodate Henifin and signed several change orders that increased the contract price of Henifin's work. This lawsuit involves these change orders that were not approved by McDonald's. Henifin sued Keystone to collect these funds and sought enforcement of a lien on McDonald's property in satisfaction of the same funds.

¶7 After a bench trial, the court determined Keystone owed Henifin $53,703.73 but denied Henifin's lien claim against McDonald's. The trial court explained:

The amount of monies owed by Keystone to Henifin Construction is an obligation that was incurred by Keystone independent of whatever rights Keystone had originally and those monies are not the obligation of McDonald's to pay. McDonald's was not a party to the agreements between Henifin Construction and Keystone, and McDonald's is not obligated to make these payments. Because the agreements and the additional obligation of Keystone are outside and beyond the terms of their basic contract, there should be no lien that is enforceable against the owner of the property, McDonald's Corporation.

The additional mount [sic] that Keystone agreed to pay Henifin Construction was not for work furnished at the instance of McDonald's, its agent, or its construction agent. McDonald's never gave Keystone the authority to approve change order [sic] on McDonald's behalf. Henifin Construction was aware of this. . . .

¶8 For purposes of attorney fees, the trial court awarded McDonald's attorney fees based on its successful defense of Henifin's lien claim. However, the trial court also determined both Henifin and Keystone were losing parties based upon the positions they took at the outset of the trial and thus ordered they be responsible for their own attorney fees. Henifin appeals.

## ANALYSIS

¶9 Henifin challenges the trial court's conclusion that Keystone was not McDonald's construction agent for the purposes of the lien statute. RCW 60.04.021 states:

Except as provided in RCW 60.04.031, any person furnishing labor, professional services, materials, or equipment for the improvement of real property shall have a lien upon the improvement for the contract price of labor, professional services, materials, or equipment furnished at the instance of the owner, or the agent or construction agent of the owner.

"Construction agent" is defined in RCW 60.04.011(1) as:

> any registered or licensed contractor, registered or licensed subcontractor, architect, engineer, or other person having charge of any improvement to real property, who shall be deemed the agent of the owner for the limited purpose of establishing the lien created by this chapter.

Because mechanics' and materialmen's liens are creatures of statute, in derogation of common law, they must be strictly construed in determining whether a lien attaches.[2]

■ ¶10 If Keystone was McDonald's construction agent for the purposes of the lien statute, then any of the improvements Keystone directed Henifin to make are subject to a mechanics' lien for the contract price of those improvements. It is undisputed that Keystone is a registered and licensed contractor that McDonald's placed in charge of constructing its restaurant. This being the case, according to RCW 60.04.011(1), Keystone is "deemed the agent of the owner for the limited purpose of establishing the lien created by this chapter." Therefore, according to RCW 60.04.021, Henifin is entitled to a lien upon the improvement of McDonald's property "for the contract price of labor, professional services, materials, or equipment furnished at the instance of" Keystone.

¶11 Keystone argues that *McCombs Construction, Inc. v. Barnes*[3] compels a finding that it was not McDonald's construction agent for the purposes of the lien statute. *McCombs* involved facts not present here and does not control this case. In *McCombs*, this court held that the son of property owners who hired a construction company to make improvements to his parents' property was not his parents' agent for the purposes of the lien statute. The court cited a prior version of the lien statute, former RCW 60.04-.010 (1975), which limited statutory agents to:

---

[2] *Schumacher Painting Co. v. First Union Mgmt., Inc.*, 69 Wn. App. 693, 698, 850 P.2d 1361 (1993).

[3] 32 Wn. App. 70, 645 P.2d 1131 (1982).

[E]very registered or licensed contractor, registered or licensed subcontractor, architect, or person having charge, of the construction, alteration or repair of any property subject to the lien as aforesaid, shall be held to be the agent of the owner for the purposes of the establishment of the lien created by this chapter . . . .

The court found the son was not the statutory agent because he had put himself in charge of the project and was not in charge of it for the benefit of his parents. The court then went on to explain:

A statutory agent who may establish a lien under the statute is a limited one. There must be a principal, impliedly the owner, who must grant authority to one of the types of persons enumerated. Although contractors, subcontractors and architects have the authority to incur an indebtedness which may result in the attachment of a lien on the owner's property, this authority may arise only where the owner has given it to them.[4]

In *McCombs*, the parents had not given their son the authority to make improvements to their property and did not direct him to make any improvements. In contrast, here, McDonald's placed Keystone in charge of the construction project. This factual difference is critical because, when McDonald's placed Keystone in charge of the construction project, the statutes deemed Keystone to be McDonald's construction agent for the purposes of establishing a lien.

¶12 McDonald's argues that the lien statute does not apply because the work Henifin was asked to do did not improve McDonald's property. Henifin's work was to remove wet soil and replace it with new material in order to create a stable foundation for the restaurant. This work improved McDonald's property.

¶13 Finally, McDonald's argues that the lien statute does not apply because the claimed amount was not within the contract price. Under the lien statute, "contract price" is defined as "the amount agreed upon by the contracting

---

[4] *McCombs*, 32 Wn. App. at 74.

parties, or if no amount is agreed upon, then the customary and reasonable charge therefor."[5] Here, the unpaid amount of $53,703.73 is part of "the amount agreed upon by the contracting parties," Keystone and Henifin, pursuant to change orders executed between them. The change orders modified the original contract, and because it was for work done at the instance of McDonald's construction agent, Henifin can enforce this written agreement through the lien statutes.

¶14 McDonald's correctly points out the contract between McDonald's and Keystone required Keystone to obtain McDonald's approval before any extra work or change could be authorized. However, Keystone's potential liability to McDonald's for breach of contract is not before this court and we do not decide the issue here. The lien statutes are clear: because Keystone was McDonald's construction agent, any work done by Henifin at the instance of Keystone exposed McDonald's to a lien claim for the contract price of those improvements performed by Henifin. A lien in the amount of $53,703.73 is thus enforceable by Henifin against McDonald's property.

¶15 Henifin requests that it be awarded attorney fees from McDonald's pursuant to RCW 60.04.181. Below, the trial court awarded McDonald's reasonable costs and attorney fees as the prevailing party.[6] Because Henifin is the prevailing party on its claims against McDonald's on appeal, we award Henifin reasonable costs and attorney fees incurred both at the trial court and on appeal. However, we see no reason to disturb the trial court's decision not to award fees and costs to Henifin with respect to its claims against Keystone.

---

[5] RCW 60.04.011(2).

[6] The trial court stated in its initial findings of fact and conclusions of law that it awarded fees pursuant to RCW 60.04.071; however, both parties concede the proper statute citation for the fee award should be RCW 60.04.181. The trial court correctly cited RCW 60.04.181(3) in its findings of fact and conclusions of law regarding attorney fees and costs.

¶16 For the above reasons, we reverse and remand for proceedings consistent with this opinion.

BAKER and AGID, JJ., concur.

Reconsideration denied January 31, 2007.