# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| NORTHWEST CASCADE, INC., a Washington corporation, | ) ) ) | No. 71061-3-I |
| Appellant/Cross Respondent, | ) ) | DIVISION ONE |
| v. | ) ) | UNPUBLISHED OPINION |
| UNIQUE CONSTRUCTION, INC., a Washington corporation, | ) ) ) | |
| Respondent/Cross Appellant, | ) ) | |
| TEMPORAL FUNDING, LLC, a Washington Limited Liability Company, | ) ) ) | |
| Defendant, | ) ) | |
| WILLIAM REHE; JANE DOE REHE; the WILLIAM K. AND MARION L., LLLP; and SAHARA ENTERPRISES, LLC, | ) ) ) ) | FILED: March 31, 2014 |
| Respondents/Cross Appellants. | ) ) | |

COURT OF APPEALS DIV I
STATE OF WASHINGTON
FILED
2014 MAR 31 PM 12: 05

GROSSE, J. — Abuse of the corporate form is established by evidence that property owned by a corporation was transferred to its shareholders after a lawsuit was filed against the corporation and that shareholders commingled personal and corporate funds such that substantial funds were diverted from the corporation during a time when the corporation was indebted to the creditor. When, as here, such diversion of funds results in an unjustified loss to the corporation's creditors, piercing the corporate veil is warranted. Accordingly, we reverse.

FACTS

Unique Construction, Inc. (Unique) is a Washington corporation owned by William (Bill) Rehe and his wife Suzanne Rehe. Bill Rehe is its president and he and his wife are the sole shareholders. Unique was incorporated in the 1980s and remained incorporated throughout this litigation.

In 2004 and 2005, Unique began acquiring lots for the development of a 34-lot residential real estate project in Tacoma. In 2005, Unique transferred the property to a single purpose limited liability company, Temporal Funding LLC, wholly owned by the Rehes. Unique acted as the general contractor for the project.

On March 27, 2006, Unique entered into a subcontract with Northwest Cascade, Inc. (NWC) to build the infrastructure for the plat. In August 2007, Unique stopped paying NWC's invoices. On July 7, 2008, NWC sued Unique for breach of contract and unjust enrichment.

In January 2009, Unique quitclaimed one its properties, the "38th Street Property," to Black Point Management LLC (Black Point), a Nevada limited liability company. Black Point then transferred the 38th Street Property to Winnemucca Enterprises LLC (Winnemucca). Winnemucca was another Nevada limited liability company controlled by the Rehes and by the William K. and Marion L. LLLP, which was formed at the direction of the Rehes. No consideration was paid for the transfers.

On July 29, 2009, Unique recorded a quitclaim deed to Black Point for one of its other properties, a house built by Unique known as the "89th Street

2

Property." The Rehes moved into the 89th Street Property in 2006 and paid no rent to Unique. They continued to reside there through this litigation except for an 18-month period when they temporarily moved out. On December 16, 2010, Black Point transferred the 89th Street Property by quitclaim deed to Sahara Enterprises LLC, a Nevada limited liability company ultimately controlled by the William K. and Marion L. LLLP. The transfers were identified as tax exempt and no consideration was paid for them. The transfer of this property left Unique insolvent.

On October 30, 2009, NWC amended its complaint, adding the Rehes and Temporal Funding LLC as defendants. The complaint also added a claim seeking to pierce the corporate veil and hold the Rehes personally liable and a claim under the Uniform Fraudulent Transfer Act (UFTA), chapter 19.40 RCW, for fraudulent conveyance of the 89th Street Property. The amended complaint did not include a cause of action that Unique's transfer of the 38th Street Property was a fraudulent conveyance nor was Winnemucca named as a defendant. In April and August of 2011, NWC filed additional amended complaints, adding the William K. and Marion L. LLLP and Sahara Enterprises LLC as defendants.

The case proceeded to trial in March 2012. On the morning of trial, NWC moved for a voluntary dismissal of defendant Temporal Funding LLC, and the court granted the dismissal. The breach of contract and UFTA claims were tried to a jury and the parties agreed to a bench trial on the equitable claim of corporate veil piercing.

3

NWC presented evidence showing a consistent disregard of corporate accounting principles by Bill Rehe on behalf of Unique, including cashing of corporate checks made out to "Cash" by Bill Rehe with no record of how the cash was used and no records indicating that such cash payments were accounted for as income to the Rehes; payment of the Rehes' medical premiums and deductible expenses, personal utility bills, and other personal expenses without properly accounting for them on the Rehes' personal tax returns as income; inadequate tax reporting; use of personal expenses and not allocating those to income; and use of the 89th Street Property for several years without payment of rent to Unique. NWC's expert testified that the substantial majority of such questionable expenses occurred before 2008.

According to Bill Rehe, he treated his corporate and personal assets as one and the same and comingled the assets because, in his mind, all of the assets belonged to him. Bill Rehe, an attorney, claimed he viewed the S-Corporation as a "flow through" entity and understood that such distributions, whether they were wages, owner's distributions, or profits, would eventually flow out to his personal tax return where it would be treated as ordinary income. Thus, the exact characterization of the distributions was, in his mind, immaterial.

Bill Rehe also testified that the funds to build the 89th Street house and purchase the 38th Street Property came solely from the Rehes' personal funds. The Rehes claimed that such funds constituted shareholder loans to Unique and that transfers of the properties were in repayment of shareholder loans. But there was no evidence of records of any shareholder loans to Unique and such

4

loans were not reflected on the Rehes' tax returns.

The jury returned a verdict in favor of NWC on the breach of contract and UFTA claims. The jury made a specific finding that Unique transferred the 89th Street Property with the actual intent to hinder, delay, or defraud creditors. The court entered judgment against Unique for $512,322.73. The court also voided the transfer of the 89th Street Property and quieted title to Unique, leaving Unique with a single asset. On the veil piercing claim, the trial court found in favor of the Rehes, concluding that "[p]iercing of the corporate veil is not necessary to prevent an unjustifiable loss to NW[C]."

The court awarded attorney fees to NWC in the amount of $237,924.54 on the breach of contract claim and $32,730.36 on the UFTA claim. The court also awarded attorney fees to the Rehes in the amount of $85,000.00 on the veil piercing claim. NWC appeals the dismissal of the veil piercing claim and the fee award to the Rehes. Unique cross appeals the fee award to NWC.

## ANALYSIS

NWC contends that the trial court erred by refusing to pierce the corporate veil and hold the Rehes personally liable. NWC argues that the evidence established as a matter of law that the Rehes manipulated Unique to their benefit and to the detriment of Unique's creditors, resulting in an unjustifiable loss to NWC. We agree.

The doctrine of "veil piercing," or "corporate disregard" allows the court to disregard a corporate entity and assess liability against individual shareholders when (1) they have used the corporation to intentionally violate or evade a duty

5

owed to another, and (2) the shareholder's conduct resulted in a unjustified loss to a creditor.[1] To establish the first element, the court must find an abuse of the corporate form, which typically involves fraud, misrepresentation, or some form of manipulation of the corporate form to the stockholder's benefit and the creditor's detriment.[2] To establish the second element, the wrongful corporate activities must harm the party seeking relief so that disregard is necessary.[3]

Whether a corporate form should be disregarded is a question of fact.[4] Thus, the trial court's ruling must be supported by substantial evidence.[5] Piercing the corporate veil is an equitable remedy that should only be used in "exceptional circumstances."[6]

Here, the trial court ruled that piercing the corporate veil was not warranted because NWC failed to show that the Rehes' commingling of personal and corporate funds and poor accounting practices were intended to defraud, manipulate, or misrepresent the corporate status of Unique or resulted in NWC's loss. The trial court did not make a finding that the 38th Street Property transfer was fraudulent or otherwise relevant to the veil piercing claim, noting that NWC did not plead a claim of fraudulent conveyance relating to that property. NWC contends that the trial court erred by failing to consider the transfer of the 38th Street Property as evidence of corporate "gutting," which establishes

---

[1] Morgan v. Burks, 93 Wn.2d 580, 585, 611 P.2d 751 (1980).
[2] Meisel v. M & N Modern Hydraulic Press Co., 97 Wn.2d 403, 410, 645 P.2d 689 (1982) (quoting Truckweld Equip. Co. v. Olson, 26 Wn. App. 638, 645, 618 P.2d 1017 (1980)).
[3] Meisel, 97 Wn.2d at 410.
[4] Truckweld, 26 Wn. App. at 643.
[5] Truckweld, 26 Wn. App. at 643.
[6] Truckweld, 26 Wn. App. at 643-44.

manipulation of the corporation to the stockholder's benefit and a creditor's detriment. We agree.

As the court recognized in Morgan v. Burks, an intentional use of the corporation to evade a duty owed to another is established when "the liable corporation has been 'gutted' and left without funds by those controlling it in order to avoid actual or potential liability."[7] In such cases, "post-tort activities must be considered, and often will *independently support* disregard of the corporate entity, because it is only *after* the tort that the impetus to 'gut' the corporation arises."[8] Here, there was undisputed evidence showing that after the lawsuit was filed against Unique, the 38th Street Property was transferred to an entity controlled by the Rehes for no consideration. Thus, the trial court was required to consider the post-lawsuit transfer of the 38th Street Property as an independent basis for disregard of the corporate form and its failure to do so was error.

NWC argued to the trial court that this questionable transfer of Unique's assets was a basis for piercing the corporate veil because it gutted corporate assets after the filing of the lawsuit. The trial court determined that the 38th Street Property transfer was not before it on the veil piercing claim because it was not pleaded to the jury as a UFTA claim:

> [COUNSEL FOR NWC]: . . . [T]he 38th Street property was clearly taken out for no consideration. Now, the jury wasn't asked to address that because that was not a fraudulent conveyance claim, but it was an asset stripped out of the company that's worth 200 and some thousand dollars that has -- that was taken for no value,

---

[7] 93 Wn.2d 580, 585, 611 P.2d 751 (1980).
[8] Morgan, 93 Wn.2d at 585 (emphasis added).

by Mr. Rehe's own admission . . . .

> That again deprives [NWC] of an asset that should have been in the corporation to pay what the final judgment is in this case . . . .

. . . .

> THE COURT: But the 89th Street property we have a jury verdict determining that was a fraudulent conveyance. We do not have a determination that the transfer of the 38th Street property was.
>
> . . . .
>
> [COUNSEL FOR NWC]: That's something -- you have to decide that on the piercing question.
>
> [COUNSEL FOR THE REHES]: No. They didn't even name Winnemuca as a party.
>
> [COUNSEL FOR NWC]: We did not assert that as a fraudulent transfer claim.
>
> . . . .
>
> THE COURT: . . . No one ever previously communicated to this Court that this Court was going to be asked to determine that the 38th Street conveyance was a fraudulent conveyance.
>
> > I was asked to consider the issue of piercing the corporate veil.

The trial court was apparently confused about the evidence it was to consider on the veil piercing claim and mistakenly decided it could not consider the 38th Street Property transfer because it was not pleaded as a UFTA claim or found by the jury to be fraudulent. While the jury was not asked to make a specific finding that the 38th Street Property transfer was a fraudulent conveyance under the UFTA, evidence of that transfer was presented and the court was not precluded from considering it as evidence to support the separate claim of veil piercing. Indeed, the very fact that the transfer of the 38th Street

8

Property was not pleaded as a UFTA claim made it all the more necessary for NWC to pursue the equitable remedy of corporate veil piercing to prevent unjustified loss resulting from that transfer.

As the court recognized in Morgan, the doctrine of corporate disregard applies "only when, at the time the doctrine is invoked, it is necessary to prevent violation of a duty owed."[9] In Morgan, the court did not apply the doctrine of corporate disregard when post-tort fraudulent conveyances were avoided by a bankruptcy trustee and ultimately left the liable corporation intact. As the court acknowledged, "the result sought by the plaintiff in this case was already accomplished by the bankruptcy trustee's avoidance of the post-tort transfers."[10] Thus, in such cases avoidance of fraudulent conveyances was a sufficient alternative to disregarding the corporate entity. But here, there was no avoidance of the post-lawsuit transfer of the 38th Street Property precisely because it was not brought as a UFTA claim. Thus, Unique was not left intact and the 38th Street Property transfer effectively "gutted" the corporation of those assets.[11]

Nor was a finding of intent to defraud required to establish abuse of the corporate form, as the trial court seemed to suggest. Rather, the evidence need only show "some form of manipulation of the corporat[e form]" to the

---

[9] 93 Wn.2d at 586.
[10] 93 Wn.2d at 588-89.
[11] As the trial court correctly noted, this was not the case of the 89th Street Property transfer, which was avoided based on the jury's finding that it was fraudulent. As a result, those assets were returned to the corporation and the transfer did not result in a loss to the corporation.

stockholder's benefit and the creditor's detriment, which was established here.[12] The undisputed evidence showed the 38th Street Property was transferred to an entity controlled by the Rehes after the lawsuit was filed for no consideration. This property was a substantial asset of Unique valued at approximately $250,000.00 at the time of transfer, and its transfer gutted Unique of assets such that it was unable to pay its creditor NWC. Piercing of the corporate veil was therefore warranted. The trial court's conclusions to the contrary were error.

NWC also contends that the trial court further erred by concluding that the evidence of the commingling of personal and corporate funds was not sufficient to justify veil piercing. We agree.

As our courts have recognized, the corporate veil will be pierced and courts will impose personal liability "where the corporate entity has been disregarded by the principals themselves so that there is such a unity of ownership and interest that the separateness of the corporation has ceased to exist."[13] In McCombs, the court held that veil piercing was warranted when the evidence established that the principal owner of a corporation "commingled his personal affairs with those of the corporation such as to warrant imposition of personal liability."[14] There, the principal owner of a corporation directed a contractor to remodel a house he rented and to send the bill to the corporation.[15] The contractor claimed a lien against the corporation for unpaid work.[16] The

---

[12] Miesel, 97 Wn.2d at 410.
[13] McCombs Constr., Inc. v. Barnes, 32 Wn. App. 70, 76, 645 P.2d 1131 (1982).
[14] 32 Wn. App. at 77.
[15] McCombs, 32 Wn. App. at 72.
[16] McCombs, 32 Wn. App. at 72.

10

principal owner then filed for bankruptcy and the corporation was dissolved. The contractor then sought personal judgment against the principal owner and the court awarded a judgment against the owner personally.[17] On appeal, the court affirmed, based on evidence showing commingling of personal and corporate affairs:

> Here, the evidence established that after the major construction was completed by the McCombs, Scott Barnes moved into the improved house with the intent of keeping it as his personal residence. Payment for the work was made with checks drawn upon the corporation's bank account and a boat manufactured by the corporation. The checks were not signed by Scott in a representative capacity on behalf of the corporation.[18]

In a recent case, a federal district court held that under Washington law, veil piercing was warranted by evidence showing use of corporate assets to pay for obviously personal expenses.[19] The court concluded that "such dissipation of the corporate assets harmed [the] Plaintiffs in that those corporate funds were not then available to pay [the] Plaintiffs' royalties."[20]

Similarly here, the dissipation of corporate assets harmed NWC because those funds were not available to pay NWC's invoices and we agree with NWC that the trial court's finding that the amount of personal expenses was "de minimus" is not supported by substantial evidence. NWC entered into the contract with Unique in March 2006 and performed work through December 2007, submitting its final invoice in April 2008. Unique stopped paying NWC's

---

[17] McCombs, 32 Wn. App. at 72-73.
[18] McCombs, 32 Wn. App. at 76-77.
[19] Curtis v. Illumination Arts, Inc., No. C12-0991JRL, 2013 WL 6173799, *9 (W.D. Wash. Nov. 21, 2013).
[20] Curtis, 2013 WL 6173799 at *9.

invoices in August 2007. The evidence showed that from July 2005 through October 2007, there were "hundreds of thousands" of credit card charges paid by Unique, $27,000.00 of which were identifiable as personal expenses and there were checks drawn on Unique's account for the Rehes' personal expenses, including medical and utility bills. Between 2006 and 2007, there were also checks drawn on Unique's account made out to "Cash" totaling approximately $33,000.00. And from 2005 through 2009, Unique was foregoing $96,000.00 in rent for the Rehes' personal use of the 89th Street house. In all, at least $177,000.00 of corporate funds were diverted by the Rehes for personal expenses during the time Unique was indebted to NWC, depriving Unique of its ability to honor its obligations to NWC.

The evidence establishes as a matter of law that the Rehes' post-lawsuit transfer of the 38th Street Property owned by Unique and their commingling of personal and corporate assets amounted to manipulation of the corporate form to the Rehes' benefit and to the detriment of NWC as Unique's creditor, and that NWC suffered an unjustifiable loss as a result. Thus, piercing the corporate veil was warranted. Accordingly, we reverse the trial court's ruling in favor of the Rehes on the corporate veil piercing claim.

Both parties challenge the trial court's award of attorney fees to the opposing party. Because we reverse on the veil piercing claim, we remand to the trial court for entry of judgment consistent with this opinion and a determination of appropriate fees to the prevailing party, NWC. We also award attorney fees on appeal, the amount to be determined by the trial court on remand.

We reverse and remand.

WE CONCUR: